ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-8-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x
MITSUI SUMITOMO INSURANCE USA INC.,

                        Plaintiff,        11 Civ. 295 (LLS)

        - against -            **OPINION AND ORDER**

GIBSON GUITAR CORP. and THE CONTINENTAL
INSURANCE CO.,

                        Defendants.
- - - - - - - - - - - - - - - - - - -X

    Mitsui Sumitomo Insurance USA Inc. ("Mitsui"), an excess insurer, seeks a declaratory judgment that it is not liable to cover any losses sustained by defendant Gibson Guitar Corp. ("Gibson") as a result of severe flooding at Gibson's manufacturing facilities in Nashville, Tennessee. Gibson moves to dismiss the complaint or to transfer the case to the Middle District of Tennessee under 28 U.S.C. § 1404(a). Mitsui cross-moves to enjoin Gibson from prosecuting an action it has pending in a Tennessee state court[1] against Mitsui, defendant Continental Insurance Co. ("CNA"), and two parties unnamed in this case: insurance brokers Willis of Michigan, Inc., and Willis of Tennessee, Inc. In its Tennessee litigation, Gibson seeks damages and declaratory relief concerning the same underlying flood occurrences and insurance coverage issues as those raised

---

[1] Gibson commenced that action shortly after Mitsui brought this suit. Mitsui removed it to the federal district court, which remanded it to the Chancery Court for Davidson County, Tennessee, for lack of federal jurisdiction.

in this matter.

For the reasons which follow, Gibson's motion to dismiss is granted and Mitsui's cross-motion to enjoin is denied.

## BACKGROUND

Gibson manufactures guitars in Nashville, Tennessee, among other places. See Sec. Am. Compl. ¶ 2, 8, 29. In May 2010, Gibson experienced severe flooding at its warehouses located at 641 and 643 Massman Drive in Nashville (the "Massman Site"), suffering roughly $17 million in losses. Id. ¶¶ 28, 40.

This dispute concerns the liability of various firms in the insurance business to cover those losses. Through insurance broker Willis and its affiliates (together, "Willis"), Gibson had procured a primary insurance policy from CNA to cover losses of the kind suffered at the Massman Site. Id. ¶¶ 12, 13. Willis had also procured an additional layer of insurance for Gibson from Mitsui to cover "excess" losses, those above the limits covered in the primary policy. Id. ¶¶ 23-26.

Shortly after the flooding, Gibson filed insurance claims through Willis, prompting disputes among the two insurers, Willis, and Gibson, primarily turning on whether the two buildings, Nos. 641 and 643, should be treated as two locations or as a single physical location with two addresses. Id. ¶¶ 29-38.

The Tennessee state court action comprises not only the matter at issue here but also the participation of Willis, who is not a party here. Which side is Willis's principal adds a complexity, for despite suggestions that Willis acted as an agent of Gibson, under Tennessee law, see Tenn. Code Ann. § 56-6-115(b) (if it applies), Willis is the agent of the insurer. The dispute is highlighted by Mitsui's unsuccessful attempt to realign Willis as a plaintiff to create federal diversity jurisdiction in the Tennessee litigation. Nonetheless United States District Judge Trauger of the Tennessee federal court, remanding to the state court, aptly characterized the litigation's primary purposes:

> The court finds that Gibson correctly characterizes this suit's primary purpose as determining "the allocation of responsibility among the insurers and brokers for Gibson's $17 million loss." The claims asserted by Gibson and the relevant case law both support this formulation.
>
> First, taking the claims as a whole, it is clear that Gibson seeks to recover money from one, two, or all of the defendants to compensate it for its losses at the Massman Drive Facility. It is true that Gibson is pursuing certain of its claims in the alternative; specifically, if Gibson recovers on its claims that its losses are covered under the policies' terms, it necessarily cannot recover under the theory that Willis was negligent in procuring the policies. Mitsui argues that this means that any claim against Willis is secondary to the claims against Mitsui and Continental. But Mitsui ignores the fact that, at this stage, it appears entirely possible for Gibson to recover against all three defendants—if Gibson recovers against Willis on the negligent procurement claim, it may still recover against Mitsui and

> Continental on the "breach of contract by estoppel" claim, because both claims are premised on the representations made by Willis rather than on the terms of the policies. Thus, it is not true that recovery against Willis is necessarily mutually exclusive with recovery against the two insurance companies, nor is it true that Willis' and Gibson's interests are entirely aligned. This supports a broader formulation of Gibson's primary purpose.
>
> \* \* \*
>
> Here, Gibson seeks compensation from Willis and/or Mitsui and Continental to cover the losses that it suffered at the Massman Drive Facility. That is the primary purpose of the suit from the plaintiff's perspective, and, in that regard, the plaintiff is adverse to all three defendants and is properly aligned against them. It is immaterial that, on certain claims and in certain respects, Gibson's and Willis' interests might overlap. Accordingly, the parties to this suit should not be realigned, and the suit should be remanded to state court because there is not complete diversity between the plaintiff and the defendants.

Gibson Guitar Corp. v. Mitsui Sumitomo Ins. Of Am., No. 11 Civ. 00370, 2011 WL 3566408, at *3-4 (M.D. Tenn. Aug. 15, 2011) (citations omitted) (footnotes omitted).

1.

The Supreme Court stated the governing principle:

> Ordinarily it would be uneconomical, as well as vexatious, for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495, 62 S. Ct. 1173, 1175-76 (1942).

- 4 -

Over 50 years later, the Court re-affirmed the principle in Wilton v. Seven Falls Co., 515 U.S. 277, 283, 115 S. Ct. 2137, 2141 (1995), saying that, "At least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed," and holding (515 U.S. at 290, 115 S. Ct. at 2144) only that, "the District Court acted within its bounds in staying this action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court."

The principle applies with particular force in this case, for the primary purposes of the litigation (as accurately described by Judge Trauger, see supra pp. 3-4), to the extent that they require the presence of Willis, cannot be effected in this litigation because of the absence of Willis.

All the parties are before the Tennessee state court. All the issues are before the Tennessee state court. The real estate which is the subject of the litigation is in Nashville, Tennessee. A question in the litigation is the effect of the Tennessee law holding an insurance broker is an agent of the insurer, not the insured. No federal law is at issue. Under

the sound principles of Brillhart and Wilton, this court will decline to issue a declaratory judgment on these matters.

2.

Mitsui's request for an injunction against Gibson's prosecution of the Tennessee Action cannot be granted. The Anti-Injunction Act, 22 U.S.C. § 2283, forbids it. It states, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 22 U.S.C. § 2283.

When the motions were brought, the injunction as requested would have been against prosecution of the Tennessee case then temporarily in federal court, but that is no longer the situation. It has been remanded to state court, where its prosecution cannot be enjoined.

3.

For the reasons stated above, the Tennessee court is fully seized of all it needs to determine the principal matters in litigation. Indeed, it is in a better position to do so than this court. No useful purpose would be served by retaining jurisdiction, by staying, rather than dismissing the case.

## CONCLUSION

Defendant Gibson's motion (Dkt. No. 46) to dismiss the complaint is granted. Mitsui's cross-motion (Dkt. No. 43) for injunction of any prosecution of the action now pending in the Chancery Court for Davidson County, Tennessee, is denied.

The clerk will enter judgment dismissing the complaint, with costs and disbursements to defendants according to law.

So ordered.

Dated: New York, New York
       September 8, 2011

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.